AMERICAN INTERNATIONAL UNDERWRITERS
(SOUTH PACIFIC), LTD., Plaintiff

v.

AMERICAN SAMOA GOVERNMENT, FA'AFETAI (RUPI)
HANIPALE, an incompetent, and LE'ALA R. HANIPALE
his mother and guardian, Defendants

High Court of American Samoa
Trial Division

CA. NO. 114-85

December 4, 1986

Before REES, Chief Justice, TAUANU'U, Chief Associate Judge, and VAIVAO, Associate Judge.

Counsel: For the Plaintiff, Roy J.D. Hall, Jr.
For Defendant ASG, Donald Griesmann,
Assistant Attorney General
For Defendants Hanipale, Michael Kruse

This is an action in interpleader. Rupi Hanipale was seriously injured while riding in a car insured by American International Underwriters (A.I.U.). The American Samoa Government (A.S.G.) provided Hanipale with medical care and paid for his transportation to Hawaii and for services there

that could not be provided locally, all in accordance with A.S.C.A. § 13.0601. Hanipale demanded payment from A.I.U. on account of his injuries, and A.S.G. also demanded reimbursement from A.I.U. for Hanipale's medical expenses. A.I.U. has deposited into the registry of the High Court the sum of $10,000, the amount of bodily injury insurance provided by the policy, and asks that the Court declare whether A.S.G. or Hanipale is entitled to the money.

Counsel for Hanipale argues that A.S.G. may not recover under the policy because the territorial statute providing for direct actions against insurance companies, A.S.C.A. § 22.2018, purports to create such actions only for "an injured person or his heirs representatives." Counsel contends that where the policy provision sued upon covers bodily injuries, the term "injured person" in the statute should be construed to refer only to the person who has sustained bodily injuries, not to a party such as A.S.G. who sustains economic injuries on account of another person's bodily injuries.

In support of this contention, counsel for Hanipale cites <u>Sciaraffa v. Debler</u>, 23 N.E. 2d 111 (Mass. 1939), and <u>Franklin Casualty Insurance Company v. Jones</u>, 362 P.2d 964 (Okla. 1961). Each of these cases denied the right of a doctor to maintain a direct action against an insurance company to collect his fees for treating a person whose injuries were covered by the company's policy. The reference to physicians in <u>Sciaraffa</u> is dictum and is unsupported by analysis. The case seems to hold that the "voluntary payment" by a son of his own medical expenses, which his father was legally obliged to pay, did not entitle the son to maintain an action against the insurance company for reimbursement of these expenses. The <u>Franklin</u> case, on the other hand, was not particularly concerned with the "voluntary" nature of the doctor's services, holding instead that the doctor was "too far removed" from the injuries "to receive the benefits" of the bodily injury clause. 362 P.2d at 966. He was, in other words, an "incidental" rather than an "intended" beneficiary of the policy, and therefore could not sue upon it. <u>See</u> <u>id</u>. Counsel for A.S.G., however, cites cases in which federal hospitals providing services under a statutory obligation are distinguished from mere "volunteer" doctors and thus allowed to maintain direct actions. See, e.g., <u>United States v.</u>

<u>Government Employees Insurance Co.</u>, 461 F.2d 58, 60 (1972):

> [T]he United States was not a volunteer; it, in rendering the service, was discharging a statutory obligation, little different from the common-law obligation of a parent to a minor child, and like the parent, it is entitled to recover for its expenses incurred by reason of its statutory obligation to the insured.

See also <u>United States v. United Services Automobile Association</u>, 431 F.2d 735 (1970), cert. den., 400 U.S. 992 (1971); <u>United States v. State Farm Mutual Automobile Insurance Co.</u>, 455 F.2d 789 (1972).

We are persuaded by the analogy between A.S.G. and a parent who pays medical expenses in fulfilment of a legal obligation. Indeed, the general pattern of the decisions cited by both sides is that a person can maintain a direct action against an insurance company if and only if he could have maintained an action against the insured tortfeasor. This seems fully consistent with the central purposes of direct action statutes: to simplify litigation and to allow an injured person to recover under a policy even if the insured tortfeasor has become insolvent or unavailable. See 12A Couch on Insurance 2d (Rev'd. Ed. 1981) § 45:798.

Other cases cited by the plaintiff, to the effect that "bodily injury" does not include loss of consortium by the injured person's spouse or emotional distress at having one's constitutional rights violated, do not contradict this conclusion.[1] In this case it is not questioned

---

[1] Indeed, one of the cases seems to <u>support</u> the contention that a husband can sue an insurance company for his losses suffered as a result of a covered injury to his wife. <u>New Hampshire Insurance Company v. Bisson</u>, 449 A.2d 1226 (N.H. 1982), affirmed a trial court judgment that an action for loss of consortium "arises from the bodily injury to" the spouse, but was not a <u>separate</u> bodily injury. Thus under a policy limit of $20,000 per person and $40,000 per incident, "the policy limit has been exhausted by the payment" of $20,000 to the wife, and the husband

that Hanipale suffered bodily injuries.   If he had
been legally responsible for his own medical bills,
he clearly could have recovered for  them under the
policy.   With regard  to the   medical bills A.S.G.
stands in Hanipale's place  as  the  real  party in
interest.  If A.S.G. were the only claimant in this
case  we  would  be  strongly  inclined  to  allow
recovery --- if not on the ground that A.S.G.  is an
"injured person" within the meaning of  the statute
then  on  the  equitable  principle of subrogation,
whereby a person who  is legally  obliged to  pay a
debt of  another person  and who  actually does pay
that  debt  acquires  the  legal  rights  of  the
creditor.[2]

The   case   actually  before  us,  however,  is
somewhat more complicated.   The  question  is not
whether  a  government  agency which is required to
pay an injured person's  medical bills  can recover
against the  tortfeasor's insurer,  but whether the

_____

could  not  recover  an  additional  $9,000  on the
theory  that  his  was  a  separate  bodily  injury
triggering the $40,000 limit.   Id.   at 1227.   The
strong implication  is that  the husband could have
recovered under the policy if the $20,000 limit had
not been exhausted.

[2]See  generally  Dobbs  on Remedies 251 (1973)
(citations omitted):

[S]ubrogation is . . .  a  remedy  invoked by
courts ---  originally equity courts --- to prevent
unjust  enrichment,  and  for  this  purpose  it is
appropriate  in  any  case  where  restitution  is
warranted  and  the  remedy  can  be  given without
working an injustice. . . .

Subrogation  simply  means substitution of one
person for another; that is,  one  person is allowed
to  stand  in  the  shoes of another and assert his
rights. . . .  [T]he  pattern  almost  always looks
something  like  this:   A  debtor owes money to a
creditor.  For some reason . . . 'the plaintiff pays
the debtor's  debt, thus  satisfying the creditor's
claim  against  the  debtor.   If  there  is  no
legitimate reason  for the plaintiff's intervention
. . . the plaintiff will be described in derogatory
terms  as  a  volunteer  and  cast into legal outer
darkness.  On the other hand, if the plaintiff paid
[t]he debt  for some good reason . . . [the debtor]
is unjustly enriched. . . .  [I]t  seems entirely
just to  give the plaintiff the same rights held by
the creditor whose claim he discharged.

agency is entitled to funds which would otherwise become the property of the injured person himself. Although there has been no evidentiary hearing in this case, it is uncontroverted that Hanipale suffered serious brain damage requiring extended hospitalization and rendering him incompetent to manage his own affairs. A.I.U., in whose interest it would be understate rather than to exaggerate the extent of the losses suffered by Hanipale, conceded that he is entitled to recover the entire amount at stake in this case, unless A.S.G. is held to have a claim superior to that of Hanipale.

This question has more to do with A.S.C.A. § 13.0601, the law providing free medical services for American Samoans, than with the direct action statute. The Fono, in providing such services, was obviously free to attach the condition that under certain circumstances the patient would be required to reimburse the government. Although the language of the statute contains no explicit conditions, it is arguable that the legislature that enacted the statute, had it anticipated the present circumstances, would have regarded them as an implicit exception to the general rule that no American Samoan should be required to reimburse the government for medical care.

Even though the Fono chose to impose no other "means test" --- even though the very wealthiest citizens are not required to pay for their treatment --- it can be argued, and defendant A.S.G. does argue, that there is a logical distinction between (a) having money and (b) having received money on account of the injuries for which medical care is needed. We can find no basis, however, for imputing to the Fono the desire to make such a distinction. If Hanipale had been receiving compensation for his injury from an employer or a government agency, or if he had been given a large sum of money by a wealthy benefactor who sympathized with his plight, A.S.G. apparently concedes that it would not be entitled to reimbursement. See A.S.G. Answers to Interrogatories, #8. This would be true even though if Hanipale had not been an American Samoan and had been responsible for his own medical bills, he would have had to pay them out of the funds thus acquired.

In this case Hanipale is entitled to receive compensation from the tortfeasor's insurer to compensate him for the pain and suffering he has endured. The law regards such injuries as

119

compensable not on the ground that injured persons should receive windfalls, but on the ground that they have suffered real injuries that they had a legal right not to be made to suffer. (This is not to say that juries and judges do not sometimes give awards that might look more like windfalls than like compensation. But the facts of this case do not suggest that the insurance company has contrived to bestow such a windfall on Hanipale.) An award for pain and suffering is, in other words, not inferior in rank or dignity to any other entitlement a person might have. We see no reason to make of such an award a unique exception to the rule that no American Samoan is required to reimburse the government for medical care, no matter what the amount or source of his wealth.

Nor should it make any difference that in this case A.S.G. made a demand on A.I.U. before A.I.U. had actually disbursed the funds to Hanipale. If a policy contains a medical payment provision, or a bodily injury provision whose limit will not be exhausted by just compensation to the injured person himself,[3] then we believe A.S.G. has the right to reimbursement from the insurer for its expenses in connection with a covered injury. Where, however, the effect of a claim by A.S.G. would be to deprive the injured person of funds to which he is otherwise entitled, we believe such a claim to be contrary to the clear purpose of A.S.C.A. § 13.0601, and therefore barred. Judgment will be entered for defendant Hanipale.

---

[3] The amount of such compensation will in many cases require a trial. On the state of the pleadings and the record, and especially in light of A.I.U's apparent willingness to settle with Hanipale before A.S.G. had made its claim, we do not believe this to be such a case.